People v Hartsfield (2022 NY Slip Op 02908)

People v Hartsfield

2022 NY Slip Op 02908

Decided on April 29, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 29, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, NEMOYER, CURRAN, AND BANNISTER, JJ.

220 KA 17-01695

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
CURTIS HARTSFIELD, DEFENDANT-APPELLANT. 

THE SAGE LAW FIRM GROUP PLLC, BUFFALO (KATHRYN FRIEDMAN OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Judith A. Sinclair, J.), rendered February 24, 2017 and June 27, 2017. The judgment convicted defendant, upon two jury verdicts, of rape in the first degree, aggravated unlicensed operation of a motor vehicle in the first degree, driving while ability impaired by drugs and operation while registration is suspended. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon two jury verdicts, of rape in the first degree (Penal Law § 130.35 [1]), aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3] [a] [i]), driving while ability impaired by drugs (§ 1192 [4]), and operation while registration is suspended (§ 512). Supreme Court severed the rape count from the remaining counts in the indictment and directed that separate trials be conducted on the counts involving defendant's operation of a motor vehicle (first trial) and the rape count (second trial).
Defendant contends that the court erred in denying his motion to dismiss the indictment with respect to counts at issue in the first trial due to the alleged insufficiency of the prosecutor's opening statement. We reject that contention. In her opening statement, the prosecutor "stated the nature of the charge[s] and the facts that [she] expected to prove in support of them[,] and thus [her] opening statement was adequate" (People v Nielsen, 67 AD3d 1440, 1441 [4th Dept 2009] [internal quotation marks omitted]; see generally People v Kurtz, 51 NY2d 380, 384 [1980], cert denied 451 US 911 [1981]; People v Nuffer, 70 AD3d 1299, 1300 [4th Dept 2010]). Contrary to defendant's assertion, the prosecutor's opening statement made reference to the fact that the underlying incident occurred on a public road in the City of Rochester—i.e., Monroe County—and therefore the opening statement was not jurisdictionally defective.
Defendant also contends that, at the first trial, the court improperly allowed three employees of the medical examiner's office to testify about the presence of cocaine in defendant's blood because their testimony was cumulative. To the extent that defendant's contention is preserved (see generally CPL 470.05 [2]), we conclude that the court did not abuse its discretion in permitting testimony from all three witnesses because evidence of the cocaine in defendant's blood was relevant to establish whether defendant was impaired by the substance beyond a reasonable doubt and "each examiner played a successive role in the analysis" (People v Hajratalli, 200 AD3d 1332, 1339 [3d Dept 2021]; see generally People v Davis, 43 NY3d 17, 27 [1977], cert denied 435 US 998 [1978]).
Contrary to defendant's further contention, we conclude that the court properly denied defendant's motion seeking substitution of counsel at the second trial and that the court did not err in denying the request without conducting an inquiry into defendant's objections with respect [*2]to defense counsel. Defendant "failed to proffer specific allegations of a 'seemingly serious request' that would require the court to engage in a minimal inquiry" (People v Porto, 16 NY3d 93, 100 [2010]; see People v Konovalchuk, 148 AD3d 1514, 1515-1516 [4th Dept 2017], lv denied 29 NY3d 1082 [2017]; People v Adger, 83 AD3d 1590, 1591-1592 [4th Dept 2011], lv denied 17 NY3d 857 [2011]). Instead, defendant essentially made only " 'vague assertions that defense counsel was not in frequent contact with him and did not aid in his defense' " (People v Jones, 149 AD3d 1576, 1577 [4th Dept 2017], lv denied 29 NY3d 1129 [2017]).
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to support the conviction of rape in the first degree at the second trial (see People v Bleakley, 69 NY2d 490, 495 [1987]) because there is "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]; see People v Carlson, 184 AD3d 1139, 1140 [4th Dept 2020], lv denied 35 NY3d 1064 [2020]).
Defendant further contends that the court erred in permitting the People at the second trial to elicit testimony from the victim about her knowledge of defendant's prior incarceration. Even assuming, arguendo, that the court erred in permitting the testimony (cf. People v Croft, 176 AD2d 1225, 1225-1226 [4th Dept 1991], lv denied 79 NY2d 855 [1992]), we conclude that any such error is harmless (see generally People v Mairena, 34 NY3d 473, 484-485 [2019]; People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Here, there can be no dispute that the evidence adduced at trial, irrespective of the challenged testimony, overwhelmingly established defendant's guilt (see Mairena, 34 NY3d at 484-485; Crimmins, 36 NY2d at 241-242), i.e., that he engaged in sexual intercourse with the victim by forcible compulsion (see Penal Law § 130.35 [1]). It is uncontested that the rape occurred at the church where the victim had worked and worshiped for many years and that it was committed by someone the victim had known for almost two decades. Thus, there is plainly no issue with respect to the perpetrator's identity nor is there confusion about the circumstances under which the rape happened. Further, the victim consistently testified, in great detail, about how defendant forced himself onto her and vaginally penetrated her to the point that she felt as though she was being stabbed in her vagina with a knife. The trial testimony also overwhelmingly established that, after the rape, the victim's vaginal injuries were so severe that she continued to bleed overnight and had to go to the hospital the next day due to the continued pain. Although the victim briefly delayed disclosing the rape, her account thereof was extensively corroborated by the consistent trial testimony of others.
We further conclude that there is no "significant probability
. . . that the jury would have acquitted . . . defendant had it not been for" the court's presumed error in admitting the challenged testimony (Crimmins, 36 NY2d at 242 [emphasis added]; see Mairena, 34 NY3d at 485; People v Hackett, 166 AD3d 1483, 1486 [4th Dept 2018], lv denied 32 NY3d 1204 [2019], reconsideration denied 33 NY3d 949 [2019]). The victim's brief testimony about her knowledge of defendant's prior incarceration is the trial's only reference to that fact, which was not mentioned during either opening or closing statements. Additionally, during their brief deliberations, the jury did not ask for a read-back of the challenged testimony or any other trial testimony, and nothing in the record indicates that the jury focused on the challenged testimony or was in any way swayed by it.
The dissent's conclusion that the court's error in admitting the challenged testimony was not harmless because its final limiting instruction, issued during the jury charge, compounded that error is entirely separate from the issue actually before us—i.e., whether the admission of the challenged testimony requires reversal. Defendant never objected to the court's final limiting instruction and, therefore, any error occasioned by that instruction is unpreserved (see CPL 470.05 [2]; People v Dixon, 214 AD2d 1010, 1011 [4th Dept 1995], lv denied 87 NY2d 900 [1995]). Further, we note that defendant has not argued on appeal that the content of the court's final limiting instruction was erroneous; he merely argues that it did not cure the prejudice caused by the challenged testimony. Thus, we conclude that the propriety of the court's final limiting instruction is not before us.
All concur except Whalen, P.J., and Smith, J., who dissent and vote to modify in [*3]accordance with the following memorandum: We respectfully dissent. We cannot agree that, at defendant's trial on the charge of rape in the first degree (Penal Law § 130.35 [1]), Supreme Court's error in permitting the People to elicit testimony from the victim about her knowledge of defendant's prior incarceration is harmless. Initially, this is not a case in which evidence of the victim's state of mind, specifically her fear of defendant, was probative on the issue of forcible compulsion, an element of the crime charged (see id.; cf. People v Croft, 176 AD2d 1225, 1225-1226 [4th Dept 1991], lv denied 79 NY2d 855 [1992]). The victim testified that she had no suspicion that an assault was forthcoming; instead, when she opened the door to defendant, she was immediately physically overtaken and pushed to the floor. Indeed, the prosecutor never asked the victim any questions that would elicit how her knowledge of defendant's prior incarceration affected her state of mind. The evidence therefore had no probative value under the circumstances of this case and should have been excluded as prejudicial (cf. People v Newton, 144 AD3d 1617, 1618 [4th Dept 2016], lv denied 28 NY3d 1187 [2017]).
Further, although the court gave a limiting instruction immediately following the victim's testimony that defendant had been "incarcerated over the years," the court nonetheless later instructed the jury that they could consider the evidence that defendant had previously been incarcerated "on the question of the victim's state of mind." This instruction compounded, rather than alleviated, the court's prior error because, as concluded above, the victim's state of mind was irrelevant to the elements of the charge against defendant under the circumstances of this case (see generally People v Murray, 191 AD3d 1324, 1326-1327 [4th Dept 2021]; People v Hollander, 177 AD3d 683, 685 [2d Dept 2019]). The court's instruction left the jurors to speculate on the relevance of defendant's prior incarceration and invited them to use that evidence as a reason to credit the victim's testimony (see People v Shaw, 160 AD2d 393, 394 [1st Dept 1990]; see generally People v Gachelin, 237 AD2d 300, 301 [2d Dept 1997]). Inasmuch as defendant's identity as the victim's attacker was established solely through the victim's testimony, we cannot conclude that the evidence of defendant's guilt, without reference to the victim's improperly bolstered testimony, is overwhelming or that there is no significant probability that the jury would have acquitted defendant had it not been for the error (see People v Crimmins, 36 NY2d 230, 241-242 [1975]). We would therefore reverse the judgment insofar as it convicted defendant of rape in the first degree and grant a new trial on that count.
Entered: April 29, 2022
Ann Dillon Flynn
Clerk of the Court