People v Jones (2022 NY Slip Op 05445)

People v Jones

2022 NY Slip Op 05445

Decided on September 30, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 30, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., NEMOYER, CURRAN, WINSLOW, AND BANNISTER, JJ.

676 KA 18-01795

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JERRY L. JONES, DEFENDANT-APPELLANT. 

JILL L. PAPERNO, ACTING PUBLIC DEFENDER, ROCHESTER (BRIDGET L. FIELD OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), rendered April 30, 2018. The judgment convicted defendant upon a jury verdict of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]). Contrary to defendant's contention, Supreme Court did not abuse its discretion in admitting certain surveillance video footage in evidence. We conclude that "[t]he video recording was sufficiently authenticated with the testimony of [an office manager] who . . . was familiar with the operation of the building's video recording surveillance system . . . , as well as with the testimony of the police [officer] who viewed the video recording immediately after the events while investigating the crime and testified that the recording admitted at trial truly and accurately represent[ed] what was before the camera" (People v Johnson, 192 AD3d 1612, 1614 [4th Dept 2021] [internal quotation marks omitted]; see People v Patterson, 93 NY2d 80, 84 [1999]; People v Costello, 128 AD3d 848, 848 [2d Dept 2015], lv denied 26 NY3d 927 [2015], reconsideration denied 26 NY3d 1007 [2015]). Contrary to defendant's suggestion, "[a]ny gaps in the chain of custody went to the weight of the evidence, not its admissibility" (People v Oquendo, 152 AD3d 1220, 1221 [4th Dept 2017], lv denied 30 NY3d 982 [2017]). Further, we conclude that the video footage was not so "indistinct that the jury would have to speculate concerning [its] contents and would not learn anything relevant from [it]" (People v Turner, 197 AD3d 997, 998 [4th Dept 2021], lv denied 37 NY3d 1061 [2021] [internal quotation marks omitted]).
Defendant further contends that the court erred in permitting the People to elicit testimony from two witnesses about an order of protection against defendant that had been issued in the victim's favor after a prior altercation between the victim and defendant. Even assuming, arguendo, that the court erred in permitting the testimony, we conclude that any such error is harmless (see generally People v Hartsfield, 204 AD3d 1502, 1504-1505 [4th Dept 2022], lv denied 38 NY3d 1134 [2022]; People v Brooks, 26 AD3d 867, 867 [4th Dept 2006], lv denied 6 NY3d 892 [2006]; People v Johnson, 15 AD3d 890, 891 [4th Dept 2005], lv denied 4 NY3d 887 [2005]). Here, the evidence adduced at trial, irrespective of the challenged testimony, overwhelmingly established defendant's guilt (see People v Crimmins, 36 NY2d 230, 241-242 [1975]). Defendant admitted to being present at the victim's residence shortly before the murder occurred; a witness placed defendant and the victim in the same positions as shown on the video footage, depicting an altercation between two individuals outside the victim's residence; the victim's blood was found on pieces of defendant's clothing; and defendant had scratches and cuts to his face, neck, and hands shortly after the incident. We further conclude that "there is no 'significant probability . . . that the jury would have acquitted . . . defendant had it not been for' the court's presumed error in admitting the challenged testimony" (Hartsfield, 204 AD3d at [*2]1505, quoting Crimmins, 36 NY2d at 242). Each witness presented only brief testimony regarding the existence of the order of protection. Further, during his interrogation, defendant himself acknowledged the existence of the order of protection and the underlying altercation, and those statements were admitted and played before the jury (see generally People v Horn, 186 AD3d 1117, 1121 [4th Dept 2020], lv denied 36 NY3d 973 [2020]). Further, there is "nothing in the record [that] indicates that the jury focused on the challenged testimony or was in any way swayed by it" (Hartsfield, 204 AD3d at 1505).
To the extent that defendant preserved his contention that the conviction is not supported by legally sufficient evidence (see generally People v Gray, 86 NY2d 10, 19 [1995]), that contention lacks merit (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Moreover, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Although a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (see id.; People v Metales, 171 AD3d 1562, 1564 [4th Dept 2019], lv denied 33 NY3d 1107 [2019]).
Contrary to defendant's contention, the court did not err in granting the People's motion to amend the bill of particulars. At any time before trial, "the prosecutor may, without leave of the court, serve upon defendant and file with the court an amended bill of particulars" (CPL 200.95 [8]; see People v Burke, 197 AD3d 967, 967 [4th Dept 2021], lv denied 37 NY3d 1159 [2022]; People v Wright, 13 AD3d 803, 803-804 [3d Dept 2004], lv denied 4 NY3d 857 [2005]). Here, "[b]ecause the amendment [to the bill of particulars] was made by the People prior to jury selection[,] [it] was . . . statutorily permissible," and the People were not required to seek leave of the court (Burke, 197 AD3d at 967 [internal quotation marks omitted]; see CPL 200.95 [8]; Wright, 13 AD3d at 804). In any event, amending the bill of particulars to expand the time frame within which the offense occurred did not unduly prejudice defendant or alter the People's theory that defendant killed the victim in the morning of the day his body was found (see generally Burke, 197 AD3d at 967-968; People v Mayo, 19 AD3d 710, 711 [3d Dept 2005]). Further, contrary to defendant's contention, the fact that the prosecutor amended the bill of particulars a week after her discussion of the time of death with the medical examiner did not establish a lack of good faith (see People v Parker, 186 AD2d 157, 157 [2d Dept 1992], lv denied 80 NY2d 1029 [1992]).
We also reject defendant's contention that certain statements made by the prosecutor in summation deprived him of a fair trial. Here, the disputed statements were "fair comment on the evidence and did not exceed the broad bounds of rhetorical comment permissible in closing argument" (People v Davis, 38 AD3d 1170, 1172 [4th Dept 2007], lv denied 9 NY3d 842 [2007], cert denied 552 US 1065 [2007] [internal quotation marks omitted]). Even assuming, arguendo, that the prosecutor's statements were improper, we conclude that, viewing the prosecutor's "summation as a whole, those comments were not so pervasive or egregious as to deprive defendant of a fair trial" (People v Elmore, 175 AD3d 1003, 1005 [4th Dept 2019], lv denied 34 NY3d 1158 [2020] [internal quotation marks omitted]).
Finally, defendant's sentence is not unduly harsh or severe.
Entered: September 30, 2022
Ann Dillon Flynn
Clerk of the Court